UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER RELATING TO TELEPHONE NUMBERS 52-552-112-3317 ("**SUBJECT PHONE 1**") AND 52-322-240-2493 ("**SUBJECT PHONE 2**") | UNDER SEAL<br>25 M 60046<br>No. 22 GJ 591<br>Thomas M. Durkin<br>Acting Chief Judge |

**APPLICATION FOR AN ORDER RELATING TO**
**SUBJECT PHONE 1 AND SUBJECT PHONE 2**

Alejandro G. Ortega, an attorney of the United States Department of Justice, hereby applies to the Court for an order relating to the following telephones:

a. WhatsApp account 52-552-112-3317 that is controlled and serviced by WhatsApp at 620 Castro Street, Suite 120-219, Mountain View, California 94041 (hereafter, "**Subject Phone 1**"); and

b. WhatsApp account 52-322-240-2493 that is controlled and serviced by WhatsApp at 620 Castro Street, Suite 120-219, Mountain View, California 94041 (hereafter, "**Subject Phone 2**") (collectively, "the **Subject Phones**").

By this Application, the government requests that this Court enter an Order granting the following relief:

- Authorizing the installation and use, for a period of 60 days, of a pen register and trap and trace device on the **Subject Phones**; and

- Requiring service providers to furnish, for a 60-day period coinciding with the duration of the pen register authority requested in this Application, subscriber information for the **Subject Phones** and subscriber information for telephone numbers in contact with the **Subject Phones**; and

- Requiring service providers to provide historical call detail records for the **Subject Phones**, for the period from January 1, 2022, through July 20, 2022.

In support of this Application, applicant states the following:

## Authority to Seek Orders

1. Applicant is an "Attorney for the government" as defined by Federal Rule of Criminal Procedure 1(b)(1)(B) and, therefore, may apply for orders requesting the specified relief pursuant to 18 U.S.C. § 3122 (pen registers and trap-and-trace devices), 18 U.S.C. § 2703 (records concerning electronic communications), and Federal Rule of Criminal Procedure 41 (search warrants).

## Factual Background

2. Since July 2021, the United States, including DEA in Chicago, New York City, and Atlanta, has been conducting a criminal investigation of over 12 identified and multiple unidentified individuals working for an international drug trafficking and money laundering organization operating out of Colombia.

3. In summary, according to a confidential source ("CS1"), an individual identified only by his first name, ANTONIO LNU, brokers narcotics-related money laundering activity in the Chicago area by connecting narcotics traffickers with couriers who make money drops to pay for narcotics, which are then converted to cryptocurrency and sent to a digital wallet. According to CS1, the owner of the digital wallet to whom the proceeds are sent is a Colombian narcotics trafficker residing in Mexico named Andres RAMIREZ-CEBALLOS. In May 2022, law enforcement obtained information from the cryptocurrency exchange Binance reflecting that RAMIREZ-CEBALLOS' digital wallet is linked to Mexican telephone number 52-552-112-3317 (**Subject Phone 1**).

4. In May 2022, CS1 was put into contact with ANTONIO LNU who communicated to CS1, via an intermediary, that he (ANTONIO LNU) needed someone in Chicago to launder $185,000. CS1 then brokered the transaction so that an undercover law enforcement officer ("UC1") would receive the money drop off. On May 9, 2022, at approximately 5:19 p.m., UC1 was contacted by an individual named Ricardo MONTES[1] and they agreed to meet so that MONTES could drop the money off to UC1. On May 10, 2022, at approximately 12:45 p.m. while on his way to meet with UC1 for the drop off, law enforcement conducted a traffic stop on MONTES and seized $185,000 from a bag in MONTES' possession. MONTES consented to a search of two phones in his possession, and explained to law enforcement that Mexican telephone number 52-322-240-2493 (**Subject Phone 2**), who MONTES could only identify as an individual with nickname "Yerb" or "Yerba," contacted him and directed him to locations in Illinois and Indiana to collect and deliver large amounts of cash, which MONTES said he understood were proceeds from narcotics. MONTES consented to a search of his cell phone and signed a consent to search form. Law enforcement searched through text messages between MONTES' phone and **Subject Phone 2** and also found photographs of brick-shaped packages of suspected kilograms of narcotics.

---

[1] Law enforcement identified MONTES as follows: after law enforcement conducted a traffic stop on MONTES, he identified himself to law enforcement and provided his identification. The photograph on his identification matched MONTES' physical appearance and law enforcement databases.

3

5. There is evidence that information concerning the ongoing use of the **Subject Phones** will provide evidence of a criminal offense, namely money laundering, and conspiracy to distribute narcotics, in violation of Title 18, United States Code, Section 1956; and Title 21, United States Code, Sections 846 and 841(a) (the Subject Offenses), and that information concerning the ongoing use of the **Subject Phones** will provide evidence of the Subject Offenses.

### Pen Register and Trap & Trace Certifications and Requests

6. Applicant requests that this Court issue an order pursuant to Title 18, United States Code, §§ 3122-24 authorizing the installation and use of a pen register and trap and trace device for the **Subject Phones**.

7. Applicant certifies that: the offenses under investigation include but are not necessarily limited to money laundering and conspiracy to distribute narcotics, in violation of Title 18, United States Code, Section 1956, and Title 21, United States Code, Sections 846 and 841(a) (the Subject Offenses) and that the information likely to be obtained from the pen register and trap and trace on the **Subject Phones**, including direct connect, push-to-talk, and digital dispatch numbers, is relevant to the ongoing investigation.

8. Applicant further states that the principal subjects of the aspect of the investigation presently before the Court are persons yet unknown.

9. Applicant requests that this Court issue an order authorizing the installation and use of the pen register to record and decode dialing, routing, addressing, and signaling information transmitted by the **Subject Phones**,

including direct connect, push-to-talk, and digital dispatch numbers, to record the date and time of such transmissions, and to record the length of time the telephone receiver in question is off the hook for incoming or outgoing calls, for a period of 60 days.[2]

10. Applicant further requests that this Court issue an order authorizing the installation and use of a trap and trace device including the feature known as "Caller ID Deluxe" to capture the incoming electronic or other impulses, including the originating telephone in call forwarding, terminating at the **Subject Phones**, which identify the originating number, or other dialing, routing, addressing, and signaling

---

[2] This includes "post-cut-through digits," which are any digits that are dialed from the **Subject Phones** after the initial call setup is completed. For example, "[s]ome post-cut-through dialed digits are telephone numbers, such as when a subject places a calling card, credit card, or collect call by first dialing a long-distance carrier access number and then, after the initial call is 'cut through,' dialing the telephone number of the destination party." *United States Telecom Association v. FCC*, 227 F.3d 450, 462 (D.C. Cir. 2000). That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made. Under these circumstances, the "post-cut-through" digits are the type of information (that is, "dialing, routing, addressing, or signaling" information) specifically authorized by the statute for capture.

Title 18, United States Code, Section 3121(c), as amended in 2001, affirmed the requirement to "use technology reasonably available" that restricts the collection of information "so as not to include the contents of any wire or electronic communications." This provision implicitly recognizes that the incidental collection of some content may occur despite the use of reasonably available technology to avoid such capture. With regard to the requirement of Section 3121(c) to use technology reasonably available so as not to include the contents of any wire or electronic communications, the government is not aware of any current technological means of separating out post-cut-through dialed digits that constitute call processing and transmission information from those that might constitute call content without losing dialing, routing, addressing, and signaling information that identifies the destination of communications from the subject telephone. If despite the use of reasonably available technology, "post-cut-through" digits are captured that constitute the contents of a communication, the government will make no affirmative investigative use of such information absent appropriate authority.

5

information reasonably likely to identify the source of a wire or electronic communication, and the date, time and duration of such incoming impulses, for a period of 60 days, and that the trap and trace device be without geographic limits.

11. Applicant further requests that the order direct the government to use technology reasonably available to it that restricts the recording or decoding of electronic or other impulses to the dialing, routing, addressing, and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communications.

12. Applicant further requests that the order direct the service provider(s), namely WhatsApp, to forthwith furnish the information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace devices, including Caller ID Deluxe, with a minimum of interference with the services accorded to the party with respect to whom the installation and use is to take place, and that reasonable compensation is to be paid by the government for reasonable expenses incurred in providing such information, facilities, and assistance pursuant to Title 18, United States Code, Section 3124(c).

**Request for Prospective Subscriber Information
Pursuant to 18 U.S.C. § 2703(d)**

13. Applicant requests that this Court issue an order, pursuant to Section 2703(d) of Title 18, United States Code, directing that any service provider shall provide all information, facilities, and technical assistance necessary to determine

the subscriber information set forth in 18 U.S.C. § 2703(c)(2)(A)-(F), specifically, subscriber name, address, local and long distance telephone connection records, length of service (including start date) and types of services utilized, telephone or instrument number or other subscriber number or identity (including but not limited to International Mobile Subscriber Identity number ("IMSI"), International Mobile Equipment Identity number ("IMEI"), and Electronic Serial Number ("ESN") and means and source of payment for service (including any credit card or bank account number), for the **Subject Phones** and for each outgoing call from and each incoming call to the **Subject Phones**, for a 60-day period coinciding with the duration of the pen register authority requested in this Application. This Application also seeks such subscriber information for the period from January 1, 2022 through July 20, 2022 for the **Subject Phones**.

14. Pursuant to 18 U.S.C. § 2703(c)(2), a service provider shall provide such information to a governmental entity if, among other ways, the governmental entity obtains a court order under § 2703(d) requiring such disclosure.

15. Section 2703(d), in turn, allows the issuance of an order for "records or other information" if the government "offers specific and articulable facts showing there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation."

7

16. As set forth above, there are specific and articulable facts showing reasonable grounds to believe that subscriber information for incoming and outgoing phone numbers is relevant and material to this investigation.

17. In a drug trafficking investigation, subscriber information for incoming and outgoing calls often yields investigative leads relating to:

    a. the identities of co-conspirators, suppliers, customers, and other individuals engaged in drug trafficking;

    b. the residential addresses of co-conspirators, suppliers, customers, and other individuals engaged in drug trafficking, thus aiding in the surveillance of the targets;

    c. the addresses of "stash" houses where narcotics are stored or packaged;

    d. locations at which law enforcement officers can conduct surveillance and trash searches (often referred to as "trash pulls") during the covert phase of the investigation, and interviews and searches once the investigation has become known to the subjects. In addition,

    e. subscriber information can yield evidence of concealment that shows consciousness of guilt; for example, drug traffickers commonly use phones subscribed to other individuals (that is, nominees), to fictitious identities, or to addresses other than their own residences.

18. Also, obtaining full subscriber information is important to the investigation because, among other things:

    a. if the subscriber name is a common one and/or the subscriber address is not current, it can be difficult to accurately identify the subscriber without a date of birth, driver's license, or social security number, especially in an area with a population as large as the Northern District of Illinois;

8

  b. if the subscriber name and address is fictitious, which frequently is the case when criminals and their associates purchase telephones, all or part of the remaining identification information may be truthful (such as the date of birth for prepaid phones) and may help identify the subscriber or lead to identifying other coconspirators;

  c. by accurately identifying subscribers using the above-requested information, agents can eliminate tangential individuals and businesses as surveillance or intelligence targets, thereby permitting law enforcement officers to focus efforts on high-probability locations and persons;

  d. payment information can provide leads to financial accounts that in turn can be sources of information regarding the subject's criminal activities and associates; and

  e. conducting interviews of persons who have had telephonic communication or personal contact with an offender may unearth witnesses or informants able to provide information leading to evidence of the **Subject Offenses** and the arrest of the offender.

19. It bears note that § 2703(d) does not require that the government show criminal culpability of the individual who is the subject of the requested information—for example, the subscriber of a phone number that has been in contact with the **Subject Phones**. Rather, the text of § 2703(d) explicitly requires that the showings necessary to obtain information be evaluated in the context of an "ongoing criminal *investigation*." 18 U.S.C. § 2703(d) (emphasis added). Section 2703(d) states, in pertinent part, that the court shall issue an order requiring disclosure by the service provider if the government offers:

> *specific and articulable* facts showing that there are *reasonable grounds to believe* that the . . . records or other information sought, are *relevant and material* to an ongoing criminal *investigation*.

(emphasis added.) Nothing in the statute requires that the government show—prior to obtaining and evaluating the information—that the information sought is evidence of a crime in the sense of evidence to be introduced at trial.

20. The statute measures relevancy and materiality by referring to the term "investigation." As the Supreme Court recognizes in other contexts dealing with subpoenas, "investigation" means the steps that law enforcement takes to determine whether a crime has occurred *or not*—that is, there is no need for a prior showing that the subject of the particular information sought is involved in the crime under investigation because the very purpose of requesting the information is to find out whether the subject has committed a crime. *See United States v. R. Enterprises*, 498 U.S. 292, 297 (1991).

21. Accordingly, Applicant requests that this Court enter an Order, pursuant to 18 U.S.C. § 2703(d), directing that any service provider provide all information, facilities, and technical assistance necessary to determine the subscriber information set forth in 18 U.S.C. § 2703(c)(2) for telephones in contact with the **Subject Phones** for a 60-day period coinciding with the duration of the pen register authority requested in this Application.

### Request for Historical Call Detail Information

22. Pursuant to 18 U.S.C. § 2703(c)(1)(B), a governmental entity may require a provider of electronic communication service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including

the contents of communications) if, among other ways, the governmental entity "obtains a court order for such disclosure under subsection (d) of this section."

23. Section 2703(d), in turn, allows the issuance of an order for "records or other information" if the government "offers specific and articulable facts showing there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation."

24. As set forth above, there are reasonable grounds to believe that historical call detail records for the **Subject Phones** for the period from January 1, 2022 through July 20, 2022, are relevant and material to the ongoing drug trafficking investigation. Among other things, law enforcement officers can use historical call detail records to analyze the past use of the **Subject Phones**, and thereby obtain information about the subjects' co-conspirators, associates, and activities, as well as patterns of behavior. In particular, in drug trafficking investigations, information about the past use of the **Subject Phones** is likely to be of assistance in identifying participants in, and witnesses with information relevant to, drug trafficking activity.

**Sealing of this Application and this Court's Orders and Related Relief**

25. Applicant further requests that this Court issue an Order directing any service provider, and their representatives, agents, and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, to the listed subscriber for the **Subject Phones**, the subscribers of the incoming calls to or the outgoing calls from the **Subject Phones**, or to any person, the existence of this Court's orders, in

11

full or redacted form, or of this investigation for a period of 180 days, to and including January 25, 2023.

26. Applicant further requests that this Court order that its Orders and this Application be sealed until for a period of 180 days, to and including January 25, 2023, except that copies of the Orders, in full or redacted form, may be served on law enforcement officers assisting in the investigation and any service provider, their representatives, agents, and employees, as necessary to effectuate this Court's Orders.

27. Finally, Applicant requests that WhatsApp and any other service provider of wire or electronic communication service, as defined in Section 2510(15) of Title 18, United States Code, shall be compensated by the government at the prevailing rate for the provision of all information, facilities, and technical assistance necessary to execute this Court's order.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: July 20, 2022.

/s/ *Alejandro G. Ortega*
ALEJANDRO G. ORTEGA
Assistant U.S. Attorney
219 South Dearborn St., Suite 500
Chicago, Illinois 60604